**IRON MOUNTAIN R. CO. OF MEMPHIS v. CITY OF MEMPHIS et al.**

(Circuit Court of Appeals, Sixth Circuit. July 5, 1899.)

Nos. 696–715.

1. JURISDICTION OF FEDERAL COURTS—CONSTITUTIONAL QUESTION—DUE PROCESS
   OF LAW—AGENCY OF CITY FOR STATE.
   The exercise by a city of its general power given it by the legislature of
   controlling the streets and of making and enforcing contracts with refer-
   ence to their occupancy by individuals or corporations, is action by the
   state, within the meaning of the provision of the first section of the four-
   teenth constitutional amendment, which prohibits any state from depriv-
   ing any person of property without due process of law: and the passage
   of a resolution by the council of a city, assuming to declare a forfeiture
   of a contract previously made with a railroad company, under which the
   company occupies a street with its tracks, and a declaration by the city of
   its intention to dispossess the company, and take possession of the street
   by the use of its police, is a threatened violation of the constitutional
   rights of the company, which a federal court has jurisdiction to restrain
   by injunction.

2. INTERSTATE COMMERCE—ATTEMPT BY STATE TO REGULATE—ENFORCEMENT
   OF CONTRACT BY CITY.
   Where a railroad company bound itself by a contract with a city not to
   discriminate in rates against the city or its inhabitants, a resolution of the
   city council, declaring rates charged by the company between the city and
   points in other states to be discriminative, and requiring their reduction
   under penalty of a forfeiture of the contract, is not a law attempting to
   regulate interstate commerce, but an attempt merely to enforce a lawful
   contract.

3. CONSTITUTIONAL LAW — IMPAIRMENT OF OBLIGATION OF CONTRACTS — WHAT
   CONSTITUTES A STATE LAW.
   A resolution of a city council, passed with all the forms required for the
   passage of ordinances, adjudging that there has been a breach by a rail-
   road company of a contract by which the city granted to it an easement
   and franchise in a street, and declaring a forfeiture of the rights granted,
   and a resumption of possession of the street by the city, although condi-
   tioned upon a failure of the company to comply with certain requirements
   within a specified time, which time has elapsed, and the condition has not
   been complied with, is a law of the state, within the meaning of section
   10 of article 1 of the constitution, against the impairment by a state of
   the obligation of contracts.

4. SAME—JURISDICTION OF FEDERAL COURTS.
   If there had not been in fact any breach of the contract by the railroad
   company, which either in law or fact would authorize a forfeiture of its
   rights, such resolution, in assuming to devest the company of its title and
   right of possession thereunder, was an impairment of the obligation of the
   contract, and a circuit court of the United States has original jurisdiction
   of a suit by the company to declare the resolution unconstitutional, and
   enjoin its enforcement, though such suit involves the determination of
   questions both of law and fact.

5. FEDERAL COURTS—ENJOINING SUIT IN STATE COURTS—PROTECTING PRIOR
   JURISDICTION.
   Where a federal court, by a suit brought by a railroad company to en-
   join the enforcement of a city ordinance on the ground of its unconstitu-
   tionality as impairing the obligation of a contract, has acquired lawful
   jurisdiction of the subject-matter, it is its duty to protect such jurisdiction
   by enjoining the prosecution by the city of an action commenced some
   time afterwards in a state court for the enforcement of the ordinance.

Appeal from the Circuit Court of the United States for the Western
District of Tennessee.

96 F.—8

These are cross appeals in a suit in equity begun by the Iron Mountain Railroad Company of Memphis against the city of Memphis and the members of the legislative council of that city. The object of the bill was to enjoin the city of Memphis and its legislative council from attempting to enforce a forfeiture of the rights of the complainant under a contract made between the complainant and the predecessor of the corporation of the city of Memphis, the taxing district of Shelby county, whereby the right was given to the complainant to occupy Kentucky avenue within the taxing district for one mile with a double-track railroad for the term of 55 years, subject to certain conditions precedent and subsequent. The bill further prayed that the legislative council and the citizens of Memphis, by permanent mandatory injunction, might be required to cancel and annul the resolution of March 25, 1898, declaring the forfeiture.

Complainant avers in its bill: That it was chartered and organized in 1886 under the laws of the state of Tennessee as a railroad corporation and a common carrier of freight and passengers, having its principal office in the city of Memphis, for the purpose of constructing, owning, and operating a railway in Shelby county and the city of Memphis, with the right to run its line along or across the streets and alleys of the city, and along and across the public roads of Shelby county, and over private property. That on the 13th of November, 1886, for the purpose of carrying out its corporate objects, it entered into a contract with the taxing district of Shelby county. That thereby the taxing district granted to the complainant the right to enter upon Kentucky avenue at the southern boundary of the taxing district, and to lay down, maintain, and operate with locomotive power a double-track railroad on either side of the central line of the avenue, the tracks not to exceed 13 feet from center to center, and to be in the middle line of the street. That the term granted was 55 years. That the complainant agreed to pave the street from curb to curb from the point where its track entered the street to the point where it left the street. That complainant agreed to build a freight depot within 5 years after it should begin the use and enjoyment of the privileges granted, and to complete the paving of Kentucky avenue in 18 months. That sections 15 and 16 of the contract were as follows: "(15) It is further agreed that said second party will at no time during the term of this contract unequally discriminate against the first party or its citizens in its rates for the carriage of freight and passengers to and from the taxing district. (16) It is further agreed and understood that the original and continued performance of each and every stipulation hereof on the part of said second party is a condition of the grant herein contained, and that failure of said second party to perform same, or any part thereof, or its failure to perform the same within the time herein stipulated, or to exercise the privilege herein granted within the time herein stipulated, shall, at the option of the said first party, work an entire forfeiture and cessation of all rights and privileges in said second party under this contract, and the first party may, in the event aforesaid, at once retake and resume its possession and control of the said premises, as if this contract had never been made. But it is agreed that such forfeiture shall not be enforced unless said second party shall for thirty days after notice neglect to perform such obligations, or to exercise such privileges."

The bill further avers that on the faith of the contract complainant purchased a large amount of property in the city of Memphis for its depot grounds and other purposes, and made large and expensive improvements, all of which involved an expenditure of upward of $330,000; that it constructed its main tracks and side tracks in accordance with its contract, graded and paved Kentucky avenue from its depot grounds as far south as its line extended; that Kentucky avenue had been entirely unpaved and unused before this, and had a bayou crossing it almost at right angles, with no bridge; that complainant, besides paving the street, constructed a culvert and bridge over the bayou, costing $30,000; that upon the improvements thus made by it complainant has paid taxes aggregating a large amount, to the city of Memphis, since the contract was made. The bill further avers that on the 7th day of October, 1897, the Memphis Freight Bureau, an association of the merchants of Memphis, presented to the legislative council of that city a complaint alleging that the St. Louis, Iron Mountain & Southern Railway Company was the successor to the

Iron Mountain Railway Company, the complainant, and as such successor became liable to the conditions of the occupancy of Kentucky avenue; that the St. Louis, Iron Mountain & Southern Railway Company had, in violation of section 15, unequally discriminated against the city of Memphis and its citizens in rates published and assessed on merchandise and commodities shipped from Memphis to stations on the lines of said St. Louis, Iron Mountain & Southern Railway Company in the state of Arkansas and Missouri, and on commodities shipped from said stations to the city of Memphis; that the petition prayed the legislative council to give notice to said St. Louis, Iron Mountain & Southern Railway Company that, unless the said alleged discriminations complained of were corrected within the period of 30 days, a forfeiture of its rights and privileges under the contract with the city would be at once declared; that the St. Louis, Iron Mountain & Southern Railway Company was a foreign corporation under the laws of the state of Missouri and Arkansas, and was not the successor of the complainant, and had not succeeded to the burdens or benefits of the contract between the complainant and the city of Memphis; that the St. Louis, Iron Mountain & Southern Railway Company appeared by its freight agent and solicitor before the legislative council of Memphis, denied that any rates which it had established on freight originated at or destined to Memphis, which it carried over its lines, were unreasonable, or resulted in an unequal discrimination against the city of Memphis or its citizens, and had contended that the rates complained of were interstate rates; that the legislative council had, therefore, no power to fix or control them, and that any question connected therewith could be considered only by the interstate commerce commission or by the federal courts in proper proceedings instituted therein; that, notwithstanding these objections, the legislative council proceeded with the hearing of the petition, and on the 9th day of December passed resolutions declaring that the complainant had been and was unequally discriminating against the city of Memphis and its merchants in rates of freight, and demanded that within 50 days thereafter it should revise and readjust its rates to and from the city of Memphis so as to obviate the inequality and discrimination; that the time of 50 days was, on February 4, 1898, extended 30 days; that on February 23, 1898, it was extended for an additional 30 days, and on the 25th of March, 1898, the legislative council passed the final resolution upon which the case turns, a copy of which appears below.

Plaintiff further avers that it was never called upon to appear before the legislative council to defend or explain any rates which it had put into effect on its railroad, and that no complaint was ever made that any rates charged for transportation over its road were unreasonable or unequally discriminatory; that, though all the proceedings were directed against the St. Louis, Iron Mountain & Southern Railway Company, the resolutions passed by said legislative council were, however, directed to, and were sought to be made effective against, complainant, because of alleged discrimination in rates which are interstate, which rates complainant did not make or promulgate, and for which complainant was in no way responsible. The bill further avers that the resolutions passed by said legislative council were so vague, indefinite, and uncertain that no party to whom they were directed could know or ascertain therefrom what rates should be changed, or the extent of the changes to be made. The bill further avers: "That it is the declared intention of the defendants, if the said resolutions were not complied with within the time therein mentioned, to enforce against your orator, the Iron Mountain Railroad Company of Memphis, in pursuance of said resolution of March 25, 1898, the forfeiture of all rights and privileges granted to it under the contract hereinbefore mentioned, and hereto attached, marked 'Exhibit B,' and your orator avers that any such enforcement of forfeiture on the part of the city of Memphis or its legislative council will result in immediate incalculable and irreparable loss and damage to your orator. Your orator avers that it has a vested property right in said contract; that upon the faith of said contract your orator has expended large sums of money in property, fixed and immovable, in said city of Memphis; and that an enforcement of forfeiture of said contract by said legislative council or by the said city, and a dispossession of your orator of its said property, would involve direct, immediate, and irreparable injury to said vested property rights of your orator. Your orator is advised and charges that it is the intention of

the defendants, having thus declared a forfeiture of said contract as aforesaid, to attempt, through its police and other officers, by force to oust your orator from the possession of its property in the city of Memphis, and to deprive it of the use of the same, and prevent it from exercising the rights which are vested in it by its charter as a railroad corporation of the state of Tennessee, and the rights which are vested in it under said hereinbefore mentioned contract with the taxing district of Shelby county and said city of Memphis. Your orator avers that the demand made by the legislative council and the city of Memphis that your orator shall reduce rates on shipments made beyond your orator's line of railroad is unreasonable, unjust, and oppressive, and is one which your orator has not the power to comply with, even if it had a desire so to do. Your orator is informed and believes that no rates which are or have been put into effect by the Missouri Pacific Railroad Company, or by the St. Louis, Iron Mountain & Southern Railway Company, are unreasonable or unjust, or unfairly discriminate against Memphis or its citizens, but, on the contrary, your orator avers that the rates which have been put into effect by the said last-named companies are fair and just, and do not discriminate either against Memphis or its people. Your orator avers that said declaration by said legislative council of forfeiture of said contract, or any attempted enforcement of same, will, at the expiration of the time mentioned in said resolution of March 25, 1898, subject your orator to a multiplicity of suits with the city of Memphis, and especially suits by abutting property owners along the line and on both sides of Kentucky avenue and contiguous thereto; that in said suits it would be claimed that your orator was occupying said Kentucky avenue and other streets and other property of said city without authority of law, and to the damage of said abutting property owners, and that the action of said legislative council in the forfeiting of said contract would be claimed in said suits to be conclusive of the unlawful occupancy of said streets by your orator; that your orator would be compelled in each of these suits to attack and call into question the injustice and illegality of the action of the defendant in declaring said forfeiture; that vast expense would be imposed upon your orator in the preparation and defense of the multitude of suits which would grow out of the situation, and that the burden of expense thus imposed upon your orator might and probably would be so great as to overtax its financial means, and make it impossible for your orator to defend its rights, and thus your orator would, in the loss of its property, sustain serious and irreparable damage." In the eighth paragraph of the bill the complainant, without admitting that discriminatory rates imposed either by itself or by the St. Louis, Iron Mountain & Southern Railway Company, would constitute a ground of forfeiture under section 16, denies that unequal discriminating rates have been imposed by either company.

Complainant further avers that, notwithstanding the fact that the contract makes no provision for a forfeiture of the same, because other companies, which are on their own line, fix rates which are unreasonable and discriminatory, the legislative council adjudged complainant guilty of a violation of the contract on the 13th of November, 1886, in a proceeding to which it was not a party, before a tribunal not a court, which was one of the parties to the contract in controversy, and to be benefited thereby; and the legislative council upon this adjudication declared a forfeiture of complainant's rights under said contract, and threatened forcibly to dispossess complainant of the property to the use of which it is entitled under said contract, and thus to impose upon complainant great and irreparable loss and damage. Complainant avers that the declaration of the forfeiture and the ousting of complainant from the possession of the property would be in violation of section 1 of the fourteenth amendment to the constitution of the United States. which provides that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. Complainant avers that the acts of the legislative council in declaring a forfeiture and in ousting complainant from the possession of the property under the resolution of March 25, 1898, and any action taken in the enforcement thereof, are and would be in violation of section 10, art. 1, of the federal constitution, providing that no state shall pass any law impairing the obligation of the contracts. Complainant further avers that the freight rates

complained of are interstate freight rates, and that the action taken by the legislative council is an attempt to regulate and control commerce between the states of Tennessee and Arkansas and Missouri, and that such action is contrary to section 8, art. 1, of the constitution of the United States, which provides that congress shall have power to regulate commerce with foreign nations and among the several states, and with the Indian tribes, and that such action is therefore void. By paragraph 11 complainant avers that the matter in controversy exceeds in value $5,000, and that the case is one arising under the constitution and laws of the United States. The prayer of the bill is that an injunction may issue out of this court restraining and enjoining said city of Memphis and said legislative council from further proceeding in the matter complained of in the petition filed by said Memphis Freight Bureau, and from in any way enforcing or attempting to enforce forfeiture as against complainant of the before-mentioned contract, or of any rights and privileges now enjoyed by it under the contract. Appended to the bill as exhibits are the contract with the railroad company, the complaint of the freight bureau, and the various resolutions of the legislative council. The resolution of December 9, 1897, after reciting the petition of the Memphis Freight Bureau, referring to the fifteenth section of the contract, stated: "And whereas, a full hearing of the matters involved in said petition, and of the defenses thereto made by said railroad company, has been had, in which hearing the said railroad company was represented by its attorneys and officers, therefore, be it now resolved: That after full investigation and consideration of the matters and charges contained in said petition of the Memphis Freight Bureau, this council finds and adjudges that said railroad company has been and is unequally discriminating against the city of Memphis and its merchants in the rates of freight established by it to and from said city; and, be it further resolved: That said railroad company be and it is hereby called upon within fifty days from this date, to revise and readjust its rates of freight to and from the city of Memphis, to the end that the inequalities and discrimination in said rates against the city of Memphis may be obviated and determined. Be it further resolved, that the secretary of the council be instructed to immediately transmit an authenticated copy of these resolutions to said railroad company, to the end that said railroad company may have full opportunity within the period aforesaid to revise and readjust its rates, as herein called upon to do; and that until the expiration of said period further action in the premises will not be taken by this council." After two extensions the resolution upon which the case turns was passed. It reads as follows: "Whereas, the railroad companies have offered in full settlement of this matter to revise and readjust their tariff of rates between Memphis and certain points upon their lines, but they declined to revise their rates to and from the other points on their lines; and whereas, this council finds that as between these last-named points and the city of Memphis the said railroad companies unequally discriminate against the city of Memphis and its citizens in rates for the carriage of freights: Therefore, be it resolved by the legislative council of the city of Memphis, that unless the Iron Mountain Railroad Company of the city of Memphis, the Missouri Pacific Railroad Company, and the St. Louis, Iron Mountain & Southern Railroad Company shall, on or before April 10, 1898, revise and readjust their rates for the carriage of freight between the city of Memphis and all points on their lines so as not to unequally discriminate against the city or its citizens, then it is hereby declared that such a failure on the part of said companies, or any of them, shall work an entire forfeiture and cessation from and after April 10th of all rights and privileges granted by the city of Memphis to the Iron Mountain Railroad Company of Memphis, under the contract of November 13, 1886, and the city will then retake and resume its possession and control of said premises and rights and privileges in said contract granted, as if said contract had never been made."

A motion for a preliminary injunction was made, but before it was heard the defendant filed an answer. The answer first averred that the complainant had lost its rights in Kentucky avenue by permitting a foreign corporation to use the tracks, and by not itself using the privileges conferred by the contract. The answer then sets out in considerable detail the alleged unequally discriminating rates charged by the St. Louis, Iron Mountain & Southern

Railway Company. It further avers that the complainant and the St. Louis, Iron Mountain & Southern Railway Company are both corporations, the stock of which is all owned by the Missouri Pacific Railroad Company, and the latter company names all the directors and managers of both companies; that the Missouri Pacific Company and the St. Louis, Iron Mountain & Southern Company have adopted the contract between the city and the complainant company, and by using the franchises therein have subjected themselves to the liabilities attached to the grant. The answer further avers as follows: "Defendants deny that any irreparable loss or damage will ensue to the complainant from the resolution of March 25, 1898. The only effect of that resolution was to declare that, if discrimination existed on and after April 10, 1898, then such failure should work a forfeiture of the privileges granted to the complainant. * * * Defendants deny that a dispossession of the complainant of said privileges would work an irreparable injury to any property rights of said complainant therein. Defendants deny that they have any intention to disturb the vested rights of the complainant. Their only purpose is to compel the complainant and its privies to fulfill their undertakings and obligations to the city of Memphis and its citizens. * * * Defendants deny that the request for a revision of rates is unreasonable, unjust, or oppressive, or that complainant is without power to comply therewith. Defendants deny that the rates now in force are not unreasonable and unjust; and they deny that said rates do not discriminate against the city and its citizens. Defendants deny that the resolution of March 25, 1898, will subject the complainant to a multiplicity of suits. In point of fact, the occupation by complainant of said street prior to the passage of said resolution was unlawful, as hereinbefore set forth, and, if a multiplicity of suits result, it is no fault of these defendants. * * * Defendants deny that the city has no right to forfeit privileges granted by said contract because of discriminations on the line of the St. Louis, Iron Mountain & Southern Railroad Company, and defendants deny that they have threatened to forcibly dispossess the complainant of any of its property, or vested rights, or to impose an irreparable loss upon complainant. Defendants deny that any action of theirs, past or contemplated, or any threat upon their part, has been or would be in violation of section 1 of the fourteenth amendment of the constitution of the United States, or any other provision of the constitution. They deny that the acts of the council, past or contemplated, with respect to the complainant, or its property, are in violation of section 10, art. 1, of the constitution of the United States. Defendants deny that the discrimination complained of is wholly upon interstate commerce. In point of fact the discrimination extends over the property of complainant within the state of Tennessee. Defendants deny that any past or contemplated action upon their part is an attempt to regulate or control commerce between the states, or that such action was or would be in contravention of section 8, art. 1, of the constitution of the United States; and defendants deny that this is a suit arising under the constitution and laws of the United States, or that there is any federal question involved herein."

At the hearing upon the preliminary injunction, evidence was filed as to the discrimination in rates. The court sustained the motion in so far as to grant a temporary injunction enjoining the city of Memphis and the legislative council from proceeding to enforce the forfeiture declared by the resolution of the legislative council March 28, 1898, against the defendant company, through its police or other officers, or by force to oust the plaintiff company from the possession of its property in the city of Memphis, or to deprive it of the use of the same under its contract with the city, or its charter, otherwise than by the judgment of a court of competent jurisdiction, as provided by law.

Subsequently the complainant tendered a supplemental bill, in which it averred that since the beginning of its injunction suit, the city of Memphis had filed a suit in ejectment against the complainant seeking thereby to have its rights in Kentucky avenue judicially forfeited, and it ousted from the street. Other averments were as follows: "Your orator avers and shows that all of the questions of law and fact above specified are raised and pending in this cause before this honorable court, and that they constitute the controversy between the defendants and your orator of which this honorable court has taken cognizance, and of which it has exclusive jurisdiction. Your orator further avers that, if

the said city of Memphis and the other defendants herein shall be permitted to prosecute its said suit in the said state court, your orator will suffer great and irreparable injury in this: that if the judgment against your orator in said suit in ejectment shall be rendered in said state court, your orator will be harassed by a multitude of suits which will inevitably be brought by citizens whose property abuts upon the streets used by your orator under said contract, who will predicate their claims upon the fact that a court of law has declared the possession of your orator in said streets to be unlawful. * * * Your orator further avers and shows that the many issues involved in said original cause in this court and in the said suit in ejectment in the state court include questions of law and fact of such a nature as to render it impracticable to have the same fairly and fully considered and determined by a jury; that any investigation of the question of reasonable or unreasonable rates, or of whether certain rates are or are not discriminatory, will require the examination of numerous and implicated tariff rates, and a consideration of many natural and artificial conditions. * * * Your orator avers that a just and fair examination and decision of these complicated questions of rates cannot be secured through a trial by jury in an action at law, but that said issues ought in justice to be tried by a court of chancery, the machinery of which is alone suited to the investigation of such complicated questions."

The prayer of the supplemental bill was as follows: "Wherefore your orator, averring that the state court has no jurisdiction to take cognizance of, hear, or determine any of the questions submitted to it in said suit in ejectment, but that the sole and exclusive jurisdiction is vested in this court, and averring that it will sustain serious and irreparable loss, injury, and damage unless the said city of Memphis shall be enjoined from further prosecuting its said ejectment suit in said state court, humbly prays this honorable court to grant its writ of injunction restraining and enjoining the said city of Memphis and the other defendants herein from further prosecuting said suits in said state court, and that pending a hearing for said injunction your orator may have a temporary restraining order embracing the relief herein prayed."

The court refused to permit the supplementary and auxiliary bill to be filed, and denied the prayer for preliminary injunction. Subsequently the plaintiff applied for additional time in which to take proof, the time under the rules having expired. The court denied this permission substantially on the ground that upon the face of the bill and answer, the complainant was entitled to the perpetual injunction in the form in which the preliminary injunction had been granted, to wit, an order restraining the city and legislative council by use of the police force or otherwise from forcibly ousting the complainant from occupation of Kentucky avenue under the resolution of March 25, 1898, because said action would be an attempt to take the property of the railroad company without due process of law, and that complainant was entitled to no other relief. The rulings of the court in refusing the preliminary injunction prayed for in the supplemental bill and in declining to allow the supplemental bill to be filed, and in refusing to grant a permanent injunction enjoining the city from continuing the prosecution of its ejectment suit in the state court were all assigned by the complainant for error. By cross appeal the city challenges in this court the jurisdiction of the circuit court to issue the injunction which it did issue, contending that the action of the legislative council was not an attempt to take property of the complainant without due process of law.

L. McFarland and A. G. Cochran, for appellants.
John H. Watkins and Luke E. Wright, for appellees.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge (after stating the facts as above). The first question which arises on this record is whether the action taken and proposed to be taken by the city was an attempt by the state to take the property of the complainant without due process of law.

Kentucky avenue was one of the streets of the city of Memphis. Title to the easement or the fee in the street was held in trust by the taxing district of Shelby county and the city of Memphis for the use of the public at large. The power to contract with reference to the street, and the power to exercise control over it, was originally vested in the legislature, and the city derived the power to control the street and to contract with reference to its use by delegation from the state through its legislature. Judge Dillon, in his work on Municipal Corporations (volume 2, § 656), states this principle as follows:

"Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated or acquired, are for the public use; and the use is none the less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the legislature may have given the supervision, control, and regulation of them to the local authorities. The legislature of the state represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the weight of more recent judicial opinion) to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places. 'To the commonwealth here,' says Chief Justice Gibson, 'as to the king in England, belongs the franchise of every highway as a trustee for the public; and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers, railroads, canals, or public roads laid out by the authority of the quarter sessions,'"—citing O'Connor v. Pittsburgh, 18 Pa. St. 187.

Section 47 of the charter of the city of Memphis, enacted by the general assembly of the state, is as follows:

"The general council shall have power to regulate the laying of railroad iron and the passage of railroad cars through the city."

Section 50 of the charter is as follows:

"The general council shall have power to improve, preserve and keep in good repair the streets, sidewalks, public landing and squares of the city; to open and widen streets, and to lay off new streets and alleys necessary, always paying the party injured therefor; and by unanimous vote to close up, transfer or sell any street, alley or public easement; and shall have and exercise complete and perfect control over all the streets, squares and other property of the city, whether lying within or without the limits of the city. They shall also have the power to compel the owner or owners of any ground or private alley to keep the same clean; or, if necessary thereunto, to compel him or them to improve the same, and remove any nuisance from the same."

In the control of the streets, in contracting with reference to their use, in the declaration of nuisances upon the streets, in the resumption of the complete control over the streets after the termination of easements in the street enjoyed by any private person or corporation, the city is acting as trustee, not alone for the citizens and residents of the city, but as a trustee for the public at large, and is exercising a power delegated to it by the state, and in the exercise of such a power is necessarily, therefore, a state agency. That this is true in Tennessee appears from the case of Williams v. Taxing District, 16 Lea, 531. That case presented the question whether the taxing district of Shelby county was liable in damages to the person whose property was injured by a failure to keep the streets in repair. Section 19 of the act creating it provided that the taxing district should not be liable for damages or injuries to person or property by reason of defects in the street under its control. It was contended that this act was

in violation of the constitution (article 1, § 17) of the state of Tennessee, which provided:

"That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may, by law, direct."

It was held that, because such suits were really against the state of Tennessee, it lay within the power of the legislature to grant or deny the right to private persons to bring suits for neglect to repair streets by a municipal corporation. Judge Cooper, in delivering the opinion, said:

"By the common law the citizen had no remedy against a county for an injury caused by the neglect of the county to keep the public roads in good repair. And such is the state of the law to this day, although the county is a municipal corporation. Wood v. Tipton Co., 7 Baxt. 112; White's Creek Turnpike Co. v. Davidson Co., 14 Lea, 73. The reason is that the county, in its municipal capacity, is only an arm or instrument of the state to carry out its sovereign prerogative in opening and keeping up public roads, and the legislature may give it only such powers as it deems best, and limit its liabilities accordingly. * * * The current of authority, while recognizing the exemption of counties from liability for injuries caused by failing to keep the public roads in repair, nevertheless holds an incorporated town liable for a similar injury occasioned by neglect of its public streets. The reason of the distinction is that municipal corporations of this class, while still arms of the state government, are more complete entities, and are enjoined and given the power to maintain the streets in a safe condition."

The ratio decidendi of the court's conclusion is that the legislature may give to a corporation such power as it chooses, but that in doing so it only vests it with the power of the state as a state agency. When, therefore, the taxing district of the county of Shelby made a contract with the complainant company by which it secured to that company for 55 years occupancy of Kentucky avenue, it was acting as an agent of the state, and as a trustee of the public at large. When now the city of Memphis, as the successor of the taxing district, comes to assert the rights secured to it by that contract, it is asserting the rights of the state and of the public at large as a state agent.

Among the prohibitions of the first section of the fourteenth amendment to the constitution of the United States is this: "Nor shall any state deprive any person of life, liberty or property without due process of law." The first question presented is whether action by the legislative council of the city of Memphis under its general power of controlling the streets and of enforcing contracts with reference to their occupancy by individuals or corporations, is action by a state within the operation of this amendment. There can be little doubt upon this point. In Ex parte Virginia, 100 U. S. 339, Mr. Justice Strong, speaking for the supreme court, said:

"We have said the prohibitions of the fourteenth amendment are addressed to the states. * * * They have reference to actions of the political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A state acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents

by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state. This must be so, or the constitutional prohibition has no meaning. Then the state has clothed one of its agents with power to annul or to evade it."

The principle was applied in Ex parte Virginia to the judge of a county court who had excluded jurors from a jury in a state court on account of race, color, and previous condition of servitude. It was followed and restated in Neal v. Delaware, 103 U. S. 370–397, where the particular act under investigation was the act of the officers charged by the law with the selection of jurors. This was held to be state action, and in so far as the officers excluded from the jury men on account of their race it was held to be a violation of the fourteenth amendment. The same principle is laid down in the Civil Rights Cases, 109 U. S. 3–17, 3 Sup. Ct. 18. In Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, the ordinance of a municipal corporation with reference to regulating the carrying on of public laundries which conferred arbitrary power upon the municipal authorities to give or withhold consent to the carrying on of such business was held to be state action violative of the guaranty of protection in the first clause of the fourteenth amendment. In Missouri Pac. R. Co. v. Nebraska, 164 U. S. 403, 17 Sup. Ct. 130, it was held that the order of the board of transportation acting under a state law, requiring a railroad corporation to furnish land for the erection of a grain elevator to a private person, was a taking of private property by the state in violation of the fourteenth amendment. In Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, and in Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, action by a state railroad commission in the regulation of rates under a statute authorizing regulation generally was held to be state action, and within the fourteenth amendment, if it resulted in depriving a person of his property without due process of law. The principle was approved in Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, and applied to the action of a state court as an agency of the state. It was held that the judgment of the highest court of a state by which a purchaser, at an administrator's sale under order of a probate court, of land of a living person, who had no notice of its proceedings, was held to be entitled to the land as against him, deprived him of his property without due process of law, contrary to the fourteenth amendment of the constitution. In Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, the principle was reasserted in a case which involved the question whether the supreme court of the state had by its decision deprived a citizen of his property without due process of law in a condemnation proceeding.

It necessarily follows that if, in the case at bar, the resolution of the legislative council, under its authority to control the streets, has deprived, or was about to deprive, the complainant of its property without due process of law, complainant was entitled to a judicial remedy, under the United States circuit court jurisdiction act of 1887–1888 and the fourteenth amendment, against such action. The aver-

ment of the bill was that the council passed a resolution of forfeiture, and of the declaration of its purpose to take possession of the street, intending to use the police force in enforcing such declaration. It could only use the police force in its governmental capacity as a branch of the state government. We concur with the court below in the opinion that the answer does not deny the charge of the bill that the intention of the legislative council in passing the resolution of March 25, 1898, was to carry out that resolution, and put the city in possession by use of its police power. The denial of the defendants possibly directed to the specific charge of the bill that they intend to use the police force to enforce the forfeiture declared, and oust complainant from the street, is as follows: "Defendants deny that they have threatened to forcibly dispossess complainant of any of its property or vested rights." As the answer denies that complainant had any property or right in the streets, this cannot be regarded as a denial at all of the charge. A similar denial that they have any intention to disturb the vested rights of the complainant is equally defective and insufficient. The court below held, and, we think, rightly, that whether the action of the railroad company with reference to rights was a breach of the condition, and justified a forfeiture or not, an attempt by the city, through a resolution by its legislative council, declaring the forfeiture on that account, and the forcible taking possession, would together constitute the taking of property of the railroad company without due process of law.

It is argued that the resolution was in exact accord with the stipulation of the parties, and in the language of the condition itself contained in the contract by which the railroad company entered upon the occupancy of the street. It is contended that it left to the city the right to declare such forfeiture at its option, and upon the declaration of such forfeiture to resume possession of the street. The language of the conditions of the contract and of the forfeiture clause are like an ordinary condition subsequent in any lease or deed conveying an estate. Such forfeiture clauses always provide that upon the breach of the condition, the lessor or the grantor may re-enter upon the premises, and have the same in his former estate; but it would be novel law to hold that under such a clause the lessor or grantor might lawfully by force and arms repossess himself of the estate, after a breach of the condition, if such repossession were resisted by the lessee or grantee. In Railroad Co. v. Johnson, 119 U. S. 608, 7 Sup. Ct. 339, the supreme court laid down the rule which has been the common law ever since the statute of 5 Rich. II. c. 7, and was probably then only declaratory of the law that a lessor entitled to possession may acquire such possession by lawful entry, but that entry by force is not lawful. Referring to forcible entry and detainer statutes, the court, speaking by Mr. Justice Miller, said:

"The general purpose of these statutes is that, not regarding the actual condition of the title to the property, where any person is in the peaceable and quiet possession of it, he shall not be turned out by the strong hand, by force, by violence, or by terror. The party so using force and acquiring possession may have the superior title, or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself, in a case of

that kind, by his own hand, and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in statu quo, or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance."

The case just cited arose under the statutes of Arkansas, but the general principle was applied without respect to the statute in the case of Railway Co. v. Harris, 7 Sup. Ct. 1286. The language just quoted was quoted with approval in that case, which arose out of an attempt by one railroad company to seize a railroad in possession of another railroad company on the ground that the first railroad company had the right of possession. The leading case upon this subject is that of Newton v. Harland, 1 Man. & G. 644, and a number of American cases upholding the same principle will be found cited in Ames, Cas. Torts, 143, note. In such cases as the present, where resistance would create a riot, and lead to the irreparable injuries so frequently resulting therefrom, equity will enjoin the threatened use of force without respect to the question who has the right of possession. In Cooke v. Boynton, 135 Pa. St. 102, 19 Atl. 944, the plaintiff was the lessee of certain coal mines. The lessor claimed that he had forfeited his rights as such, and that the lessor was entitled to enter. The lessor tore up by force a tramway laid under the lease, and an injunction was then issued and sustained in enjoining the lessor from a continuance of such interference with the possession of the lessee, and this without regard to the merits of the controversy. The same rule was laid down in Easton, S. E. & W. E. P. Ry. Co. v. City of Easton, 133 Pa. St. 505, 19 Atl. 486, where a municipal corporation attempted to oust a street-railway company from the use of its streets on the ground that it was not complying with the terms of its grant. The same doctrine is laid down in Delaware County & P. Electric Ry. Co. v. City of Philadelphia, 164 Pa. St. 457, 30 Atl. 396, and in Asheville St. Ry. Co. v. City of Asheville, 109 N. C. 688, 14 S. E. 316, which were also cases of the interference by a municipal corporation with the occupation of streets by street-railway companies. See, also, Brooklyn Cent. R. Co. v. Brooklyn City R. Co., 32 Barb. 358, 367. It is difficult to reconcile these cases with that of Pacific R. Co. v. Leavenworth, 1 Dill. 393, Fed. Cas. No. 10,649, which can hardly be supported.

It is argued with much vigor and force that to hold that the resolution of the city declaring a forfeiture and its intention to resume possession of the premises is nothing but the declaration of the existence of a breach of the contract between two private persons by one of them, and that to hold that it comes within the inhibition of the fourteenth amendment, will be to hold that any tort or improper seizure by the officials of a municipal corporation is the act of the state, and a taking of property without due process of law, contrary to the federal constitution. It is true that a municipal corporation, when it exercises state authority as a state agency, may, by its torts and breaches of contract, come within the fourteenth amendment, or some other clause of the federal constitution, where a private

individual would not. It does not follow, however, that all its torts and all its breaches of contracts are within those prohibitions, because in the case of some of its contracts it acts only as a private corporation. With respect to the occupancy of a street, however, which it controls by virtue of its being an agent of the state, and a trustee for the public, its action in depriving persons having vested property rights in the street will, if without due process of law, be state action, within the inhibition of the fourteenth amendment. For our present purpose, it is not important whether this threatened taking possession of a street under a resolution by force is to be regarded as legislative or executive action, for either, as we have seen, is within the inhibition of the clause of the first section of the fourteenth amendment, which forbids a state to deprive a person of his property without due process of law. What has been said necessarily leads to the conclusion that the court below was right in sustaining its jurisdiction on the ground that the action of the city taken and contemplated would constitute a violation of the fourteenth amendment, and might be prevented by injunction. In so far as the appeal of the city is concerned, therefore, the decree of the court below must be affirmed.

We come now, however, to a much more difficult question, which arises on the appeal of the complainant below, the railroad company. The court below held that there was no jurisdiction under the bill, except that which arose out of the threatened taking possession of the street, and ousting the railroad company therefrom by force, without due process of law. It enjoined the city only from taking forcible possession of the street. This injunction might properly have been founded on the relative situations of the parties as they were admitted to be. The fact that the railroad company was in possession of the street, gained lawfully, and that the city could not rightly enforce a forfeiture without judicial proceedings, was a sufficient ground for granting the injunction which the court below granted; and it became immaterial, therefore, in furnishing this remedy, whether the railroad company had violated a condition forfeiting its estate. If the threatened use of the police to enforce the resolution of forfeiture was essential to the federal jurisdiction, then it would seem that the order of the court below disposed of the entire controversy before it. If, however, the resolution of the legislative council was a law of the state regulating interstate commerce, or was a law of the state impairing the obligation of contracts, or depriving a person of its property without due process of law, then the complainant could invoke the jurisdiction of the court below to enjoin its enforcement, without regard to the method by which it was proposed to carry it into effect.

This brings us to the next question in the case. Was the action of the city a law attempting to regulate interstate commerce? Plainly it was not. A railroad company has a right to make a contract with respect to interstate commerce, and to bind itself to a certain rates, if it chooses to do so. It bound itself here to impose no rates which were unequally discriminating against the city of Memphis. This was its duty under the interstate commerce law, if it had any power

to fix rates upon such commerce, and it might contract with any person or city to do that which it was its duty to do under the law. The action of the city, therefore, was merely an attempt to enforce a contract right, and not to regulate interstate commerce, except in so far as the common carrier had lawfully bound itself to the city contractually with respect to a particular part of that commerce.

We come, then, to the question: Did this resolution violate that part of section 10, art. 1, of the constitution of the United States, declaring that "no state shall * * * pass any * * * law impairing the obligation of contracts"?

First. Was the resolution a law of the state within the meaning of this clause? It has frequently been decided that, where a municipal council passes an ordinance in pursuance of authority vested in it by the state legislature, which is legislative in its character, and which is merely the exercise of delegated power to make laws that the legislature might have made directly, such an ordinance is a law within the inhibition of the constitution if it impairs the obligation of a contract. Murray v. Charleston, 96 U. S. 432; U. S. v. New Orleans, 98 U. S. 381, 392; Meriwether v. Garrett, 102 U. S. 472; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77. If such ordinance is administrative, rather than legislative, then it is not within the constitutional inhibition, even though it impairs the obligation of a contract. New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., 125 U. S. 18, 8 Sup. Ct. 741. The resolution in the case before us is admitted to have been passed with all the forms required, and by the vote necessary to enact an ordinance. It concerned the occupancy of the streets, which, as we have seen, the legislative council controls under delegated authority from the state legislature, as an agency of the state and a trustee for the public at large. It purported to find and adjudged the ground to exist for declaring a forfeiture of a grant of an easement and a franchise in the streets which the legislative council as the agent of the state had made, and it exercised the option reserved to it in the grant of insisting upon such grounds as a forfeiture unless the grantee within 50 days should change its course of conduct. It is conceded that the grantee did not change its course of conduct, and that the resolution has become operative by its terms, if it can have any efficacy to effect a divestiture of title. Where the sovereign makes a grant upon condition subsequent, the breach of the condition does not of itself devest title and right of possession, but the power is in the sovereign, as grantor, to manifest his will that the condition shall be enforced, and this manifestation of his will is by legislative action. In this case the condition expressly requires that the council should exercise an option before forfeiture should ensue. In exercising such an option, the council is acting in a legislative capacity. Its declaration is a law. In Schulenberg v. Harriman, 21 Wall. 44, 63, in dealing with the question of enforcing forfeiture of grants of public lands granted upon condition, and the divestiture of title, Mr. Justice Field, speaking for the court, said:

"And it is settled law that no one can take advantage of the nonperformance of a condition subsequent annexed to an estate in fee but the grantor or his heirs, or the successors of the grantor if the grant proceed from an artificial person; and, if they do not see fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. The authorities on this point, with hardly an exception, are all one way from the Year Books down. And the same doctrine obtains where the grant upon condition proceeds from the government. No individual can assail the title it has conveyed on the ground that the grantee has failed to perform the conditions annexed. In what manner the reserved right of the grantor for breach of the condition must be asserted so as to restore the estate depends upon the character of the grant. If it be a private grant, that right must be asserted by entry or its equivalent. If the grant be a public one, it must be asserted by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground; or there must be some legislative assertion of ownership of the property for breach of the condition,—such as an act directing the possession and appropriation of the property, or that it be offered for sale or settlement. At common law the sovereign could not make an entry in person, and therefore an office-found was necessary to determine the estate; but, as said by this court in a late case, 'the mode of asserting or of resuming the forfeited grant is subject to the legislative authority of the government. It may be after judicial investigation, or by taking possession directly under the authority of the government without these preliminary proceedings.' In the present case no action has been taken, either by legislation or judicial proceedings, to enforce a forfeiture of the estate granted by the acts of 1856 and 1861. The title remains, therefore, in the state as completely as it existed on the day when the title by location of the route of the railroad acquired precision and became attached to the adjoining alternate sections."

In U. S. v. Repentigny, 5 Wall. 211, 268, it was said, "The mode of asserting or of assuming the forfeited grant is subject to the legislative authority of the government." See, also, Farnsworth v. Railroad Co., 92 U. S. 49, 66; Van Wyck v. Knevals, 106 U. S. 360, 368, 1 Sup. Ct. 336; Railroad Co. v. Mingus, 165 U. S. 413, 17 Sup. Ct. 348. An examination of these cases makes it entirely clear that a declaration of a forfeiture of a public grant for condition broken is legislative in its character. It is not conclusive, of course, of the facts asserted, and may be judicially resisted (see Railroad Co. v. Mingus, 165 U. S. 413, 434, 17 Sup. Ct. 348); but, if the condition in fact has been broken, it operates to devest the title and the right of possession. The resolution in question was a declaration enacted in form of law by the legislative council, a state agency, vested with legislative authority over the streets, by which, if valid, the title of the city and state and public in the streets granted to the complainant was devested from it, and revested in the grantors. Clearly, the resolution was and is a law of the state within the meaning of the constitution. It is contended that it cannot be a law, because it does not declare a present forfeiture, but only a future one, contingent on conduct of the grantee. We do not think this feature of the resolution deprives it of its legislative character. The operation of laws is frequently postponed to a future day, and made to depend on a contingency. When, as is conceded in the present case, the time of suspension is passed, and the contingency has happened, they are as efficacious as if they had contained no conditions. This resolution found and adjudged a condition to be broken, and declared that the

council exercised its option to declare a forfeiture and to resume possession if the breach continued 50 days. The conduct declared by the council to be a breach, it is conceded, has continued, and the declaration of forfeiture has become operative.

There are many cases in which the supreme court has declared a city ordinance to be a law within the contract clause of the constitution which have much less of legislative character than public forfeitures of rights in the streets by municipal legislatures. Such a case is that of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77. The water company filed a bill to enjoin the city of Walla Walla and its officers from erecting waterworks in pursuance of an ordinance of the city to that effect. The water company had a contract with the city by which the city stipulated that during the term of the contract it should not erect, maintain, or become interested in any waterworks except the one provided for in the contract, which it was given power to condemn. Subsequently the city passed an ordinance for the erection of new waterworks, and the question was whether that was a law impairing the obligation of a contract such as to give a federal court jurisdiction to enjoin its enforcement. The court, speaking by Mr. Justice Brown, states the objection to the jurisdiction as follows:

"The argument of the defendant in this connection is that the action of the city in contracting with the water company, and in passing the ordinance of 1893, providing for the erection of waterworks, was not in the exercise of its sovereignty; that in these particulars the city was not acting as the agent of the state, but was merely exercising a power as agent of its citizens, and representing solely their proprietary interests; that the council in such cases, as trustee for the citizens, stands in the relation to them as directors to stockholders in a private corporation, acting solely as the agent of the citizen, and no wise as the agent of the state, and therefore that neither the state, nor the city as its agent, can be charged either with the making or the impairing of the original contract; that for these reasons the constitution of the United States has no application to the case, the federal court has no jurisdiction, and the bill, upon its admitted facts, presents only a violation by a citizen of the state of its contract with another citizen, and the plaintiff is bound to resort to the state courts for its remedy. It may be conceded, as a general proposition, that there is a substantial distinction between the acts of a municipality as the agent of the state for the preservation of peace and the protection of persons and property and its acts as the agent of its citizens for the care and improvement of the public property and the adaptation of the city for the purposes of residence and business. Questions respecting this distinction have usually arisen in actions against the municipality for the negligence of its officers, in which its liability has been held to turn upon the question whether the duties of such officers were performed in the exercise of public functions or merely proprietary powers. It is now sought to carry this distinction a step further, and to hold that, if a contract be made by a city in its proprietary capacity, the question whether such contract has been substantially affected by the subsequent action of the city does not present one of impairment by act of the state or its authorized agent, but one of an ordinary breach of contract by a private party; and hence the case does not arise under the constitution and laws of the United States, and the court has no jurisdiction, unless there be the requisite diversity of citizenship. How far this distinction can be carried to defeat the jurisdiction of the court or the application of the contract clause may admit of considerable doubt if the contract be authorized by the charter; but it is sufficient for the purposes of this case to say that this court has too often decided for the rule to be now questioned that the grant of a right to supply gas or water to a municipality and its inhabitants through pipes and mains laid in the streets, upon condition of the performance of its service

by the grantee, is the grant of a franchise vested in the state, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the constitution of the United States against state legislation to impair it. New Orleans Gaslight Co. v. Louisiana Light & Heat Producing & Manufacturing Co., 115 U. S. 650, 660, 6 Sup. Ct. 252; Waterworks Co. v. Rivers, 115 U. S. 674, 6 Sup. Ct. 273; St. Tammany Waterworks Co. v. New Orleans Waterworks, 120 U. S. 65, 7 Sup. Ct. 405; Crescent City Gaslight Co. v. New Orleans Gaslight Co., 27 La. Ann. 138, 147. It is true that in these cases the franchise was granted directly by the state legislature, but it is equally clear that such franchises may be bestowed upon corporations by the municipal authorities, provided the right to do so is given by their charters. State legislatures may not only exercise their sovereignty directly, but may delegate such portions of it to inferior legislative bodies as, in their judgment, is desirable for local purposes. As was said by the supreme court of Ohio in State v. Cincinnati Gaslight & Coke Co., 18 Ohio St. 262, 293: 'And assuming that such a power [granting franchises to establish gas works] may be exercised directly, we are not disposed to doubt that it may also be exercised indirectly, through the agency of a municipal corporation, clearly invested, for police purposes, with the necessary authority.' This case is directly in line with those above cited. See, also, Wright v. Nagle, 101 U. S. 791; Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 266, 13 Sup. Ct. 90; Bacon v. Texas, 163 U. S. 207, 216, 16 Sup. Ct. 1023; New Orleans Waterworks Co. v. City of New Orleans, 164 U. S. 471, 17 Sup. Ct. 161. * * * We know of no case in which it has been held that an ordinance alleged to impair a prior contract with a gas or water company did not create a case under the constitution and laws of the United States. Granting that in respect to the two classes of cases above mentioned responsibilities of a somewhat different character are imposed upon a municipality in the execution of its contracts, our attention has not been called to an authority where the application of the constitutional provision as to the impairment of contracts has been made to turn upon the question whether the contract was executed by the city in its sovereign or proprietary capacity, provided the right to make such contract was conferred by the charter. We do not say that this question might not become a serious one; that, with respect to a particular contract, the municipality might not stand in the character of a private corporation; but the cases wherein the charter of a gas or water company have been treated as falling within the constitutional provision are altogether too numerous to be now questioned, or even to justify citation."

Here the contract, the obligation of which was found to be impaired, concerned only the furnishing of water to the citizens of a municipal corporation,—a subject-matter certainly not regarded as more within the governmental functions of a city than the supervision and control of the streets, and the granting and resuming of public rights therein; and the law which was held to impair the obligation of the contract was merely another ordinance providing for the construction of other waterworks by the city. Such municipal action as the building of waterworks has usually been regarded as proprietary, rather than governmental, and yet the ordinance directing it was held to be a law in violation of the federal constitution.

Second. Does the resolution impair the obligation of the contract contained in the grant? If what the complainant has done and is doing is a breach of the condition of the grant, then the resolution was certainly neither a breach nor an impairment of the contract. It was only legislative action equivalent to a re-entry upon condition broken in its effect upon the title and right of possession, and was, therefore, in exact accord with the terms of the contract and grant. If, however, the condition has not been in fact and in law broken, then the resolution as law assumes to devest title and the right of

possession, when not permitted by the terms of the contract, and purports to secure a right to the city and her officers of resuming possession which would be violative of its provisions. This is certainly an impairment of the obligation of a contract. · It is true that the question whether the resolution impairs the obligation of a contract turns on mixed questions of law and fact,—First, whether the contract provides for a forfeiture upon a breach of the covenant that the complainant will not charge to Memphis and her citizens unequally discriminating rates; and, second, whether complainant, or any corporation for whom complainant is responsible, is charging such rates. That the application of the constitutional restriction depends partly on a question of fact is no reason for holding that the case is not one in which it may be relied on. The existence of the contract, the impairment of which is averred, may often be an issue of fact. The circumstances which render the operation of the law an impairment of the obligation of the contract may often be brought to the knowledge of the court by parol proof.

Nor does it avoid the application of the constitutional restriction to say that, if the condition was not broken, this resolution was a mere breach of the contract, and not an impairment of its obligation. To begin with, it may be doubted whether a mere declaration of forfeiture, when the condition is not broken, not followed by forcibly taking possession, is a breach of the contract and grant. It forms a cloud upon the grantee's title, but does it break any covenant in the grant? It is not necessary to discuss this question, because it is immaterial whether it is a breach of the contract or not. It impairs the obligation of a contract if it purports by force of law to authorize any one to do that which would be a breach of the contract. This the resolution certainly does, assuming the condition not to have been broken, for by declaring the revestiture of title and right of possession in the city, it authorizes the city officers peaceably to take possession of the street, and to take up the tracks, and would doubtless authorize the bringing of suits by abutting owners for a nuisance peculiarly harmful to them. The language of Chief Justice Waite in Brown v. Colorado, 106 U. S. 95, 98, 1 Sup. Ct. 175, on a point not in judgment, might, upon first reading, justify the conclusion that the fact that a law is a breach of a contract previously made with the state prevents it from impairing the obligation of the contract, but such is not the proper construction of the words of the chief justice. The case was one coming to the supreme court from the highest court of the state under the twenty-fifth section of the judiciary act, to review a judgment in ejectment in favor of the state of Colorado against one who had granted the land to the state, and who defended on the ground that a condition of the grant was that the capitol was to be built thereon, and it had been broken by a statute placing the capitol elsewhere. The state court had found there was no such condition in the grant. The supreme court held that the validity or invalidity of the statute and its impairment of the contract were not in question, because the state did not admit the condition, and did not rely on the statute as a justification for a breach of it. The chief justice said, in effect, not generally that a breach of a contract by a state

law would not impair its obligation, but only that in the case then before the court, where the statute was not relied on by the state as authority for its alleged breach of its contract, the statute did not impair the obligation of the contract in such way that the defendant could make, in that case, a federal question on its validity, upon which to reach the supreme court. Certainly, the chief justice meant to lay down no general rule that a law which violates a contract does not impair its obligation, for cases in the supreme court supporting a contrary view are too numerous. In the Walla Walla Case, cited above, it is difficult to see in what respect the ordinance of the city directing the construction of waterworks impaired the obligation of the prior exclusive grant, except in that it was an express breach of the covenant of the city in the grant that the city would not construct waterworks of its own, but would buy those of the grantee. In the case at bar we have a law which, if that which is recited to be a fact by its terms is not a fact, purports to give state authority to commit acts which would be breaches of a contract. It purports to restore the street to the city, so that private citizens would be authorized thereby to treat the same as city property, and city officers would be authorized to take peaceable possession, peaceably to take up the tracks, and to remove other property of the grantee therefrom. It seems to us that this is a law impairing the obligation of a contract if founded on a nonexistent breach of a condition.

It is unnecessary for us to discuss at length the reasons for holding that the resolution was a law depriving the complainant of its property without due process of law, if, in fact, the condition had not been broken, for they are substantially the same as those just stated for concluding that the resolution is a law of the state impairing the obligation of the contract. If this resolution violates the federal constitution, there can be no doubt that complainant is entitled to equitable relief. It is certainly a cloud upon the title of the railroad company in its occupancy of the street, which it may ask a court of equity to remove, and to enjoin any claim under it. We conclude, therefore, that the bill stated a good cause of action on the ground that the resolution of the city of March 25, 1898, impaired the obligation of the contract under which the railroad company occupied Kentucky avenue, if it be true, as averred in the bill, that no condition of the contract had been broken justifying forfeiture. This gave to the court below jurisdiction of the whole controversy between the city and the railroad company; and, inasmuch as the suit had been brought a considerable time before the state suits were brought, it justified and required the court below to enjoin the suits in the state court as an impairment of its jurisdiction over the controversy with which it had been invested by the filing of the bill. That such a remedy is not in conflict with section 720 of the Revised Statutes, forbidding the federal courts to issue injunctions against proceedings in a state court, is abundantly established by authority. French v. Hay, 22 Wall. 250–253; Dietzsch v. Huidekoper, 103 U. S. 494–498; Fisk v. Railroad Co., 10 Blatchf. 518, 9 Fed. Cas. 167; Union Mutual Life Ins. Co. v. University of Chicago, 6 Fed. 443; Sharon v. Terry, 36 Fed. 337; Garner v. Bank, 16 C. C. A. 86, 67 Fed. 833. In this view of the

case, the court below should have permitted the filing of the supplementary bill, and should have granted the injunction to restrain the suits in the state court.    We are of opinion that the fifteenth section of the contract was one of the conditions referred to in section 16, and, therefore, that the only issue made is whether section 15 has been violated or not.    Upon this issue the court below should allow evidence to be taken, and should declare the rights of the parties accordingly.

The decree of the court in so far as it refused the further relief prayed for by the complainant in its bill is reversed, with directions to take further proceedings not inconsistent with this opinion.