EAST TENNESSEE TELEPHONE CO. v. BOARD OF COUNCILMEN OF CITY OF FRANKFORT, KY., et al.

(Circuit Court, E. D. Kentucky. September 25, 1911.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—PERMISSION TO ERECT TELEPHONE POLES IN STREETS—CONSTRUCTION.

Where a city council granted "permission" to erect telephone poles in different parts of a city and to carry it across the city bridge, and the telephone company thereupon expended $90,000 in erecting a line thereunder, such permission constituted the grant of a franchise, and was not a mere license revocable at the will of the city.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

2. COURTS (§ 369*)—FEDERAL COURTS—DECISION OF FEDERAL QUESTION—EXCLUSIVENESS.

The decision of the highest court of the state as to the validity and effect of state action claimed to make a contract, the obligation of which is attempted to be impaired by subsequent state action, raises a federal question, and is not binding on federal courts, but it is the duty of the latter when the question is properly brought before them to determine it by the exercise of independent judgment.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 369.*

Jurisdiction of federal court in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308 ; Montana Ore Purchasing Co. v. Boston & M. C. C. & S. Mining Co., 35 C. C. A. 7 ; Earnhart v. Switzler, 105 C. C. A. 262.]

3. JUDGMENT (§ 740*)—RES JUDICATA—QUESTION NOT WITHIN ISSUES.

A city council, having granted an alleged franchise to plaintiff's assignor to erect and maintain a telephone line, attempted to revoke the same by resolution on the contention that it was a mere revocable license, and thereafter passed an ordinance providing a penalty for telephone companies doing business without a franchise. Plaintiff thereupon brought suit in the state court to enjoin defendants from proceeding to enforce the penalty ordinance, and, defendant's demurrer to the petition having been sustained and the demurrer dismissed, plaintiff appealed, in which the court held that defendants were not entitled under the then existing conditions to enforce the ordinance, as plaintiff was not without any right whatever on the streets, and further, that the nature of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff's right under the grant was a mere license revocable by the city, and that, after the expiration of 90 days after notice of revocation, plaintiff could be ejected from the streets. *Held*, that such construction of plaintiff's grant was not within the issues, and hence was not res judicata in a subsequent action by plaintiff in a federal court to restrain the city from enforcing such revocation ordinance.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1268; Dec. Dig. § 740.*]

In Equity. Suit by the East Tennessee Telephone Company against the Board of Councilmen of the City of Frankfort and others. On plaintiff's motion for preliminary injunction. Granted.

W. Pratt Dale, Humphrey & Humphrey, and W. L. Granbery, for plaintiff.

Guy H. Briggs and Scott & Hamilton, for defendants.

COCHRAN, District Judge. This cause is before me on a motion for a preliminary injunction.

It is a suit by a Kentucky public service corporation, the East Tennessee Telephone Company, against a Kentucky municipal corporation, the city of Frankfort, and certain of its officials. The jurisdiction thereof rests on the ground that it has arisen under the laws and Constitution of the United States. The plaintiff claims to be the owner of a right to operate and maintain a telephone line on and over the streets of the defendant city granted by it to the East Tennessee Telephone Company of New York, a corporation of that state, April 11, 1881, and duly assigned by it to the plaintiff July 28, 1887. Shortly after the granting of the alleged right, plaintiff's predecessor erected a line pursuant thereto, and same has been maintained and operated thereunder ever since, first by plaintiff's predecessor, and then by plaintiff. The bill alleges that the line, as it now stands, is of the reasonable value of $90,000. The defendants deny that the plaintiff now has any such right. They claim that it now maintains its line on and over the streets of the defendant without any right whatsoever. They concede the alleged grant of April 11, 1881, but claim that it was a mere license revocable at the will of the defendant city, and that same was revoked by a resolution duly adopted by it on January —, 1911, by which plaintiff was given 90 days from the delivery of a copy thereof by the city marshal to plaintiff to remove its line from the streets of the city. Theretofore, to wit, on June 13, 1910, the defendant city duly passed an ordinance providing a penalty for telephone companies doing business without franchises. In view of the revocation of plaintiff's license by the resolution of January —, 1911, and the expiration of the 90 days called for by it, defendants claim that plaintiff is now doing business without a franchise, and is subject to the penalties prescribed by the ordinance, and they are threatening to enforce same against the plaintiff. The plaintiff claims, on the other hand, that the resolution of January —, 1911, is a law of the state impairing the obligation of the contract of April 11, 1881, assigned to it July 28, 1887, under which it has a right to perpetually maintain and operate a telephone line on and over the

streets of the defendant city, and is hence in violation of section 10, art. 1, of the United States Constitution, and by reason thereof is null and void. The defendant city passed another ordinance on June 13, 1910, prescribing certain rentals to be charged by telephone companies and a penalty for charging a rental in excess thereof which it is threatening to enforce against plaintiff also. Plaintiff claims that this ordinance is confiscatory as to it, and deprives it of its property without due process of law, in violation of the fourteenth amendment to the United States Constitution. The bill seeks an injunction restraining the defendant from enforcing either of said ordinances against it. It is not seriously contended that it is not entitled to a ·preliminary injunction as to the rate ordinance. Indeed, defendant's position is that plaintiff is without right doing a telephone business in the city, and has no right to charge any rates whatever. I will therefore confine this opinion to that feature of the case.

[1] The disposition of the motion hangs on the question whether first the grant of April 11, 1881, was the grant of a mere license revocable by the city at will, or of an irrevocable and perpetual right to maintain and operate a telephone line on and over the streets of the city, and then, if it be held to be a mere license, whether it was revocable after the licensee and plaintiff had expended $90,000 in erecting the line. The language of the grant is that the petition for "permission * * * to erect telephone poles in different streets of the city and to carry it across the city bridge was presented and granted." The permission granted in words went no further than to erect telephone poles on the streets and to carry it across the city bridge. It will not be disputed that it also included the permission to stretch wires on those poles, and not only to erect the poles and stretch the wires, but to maintain and operate the line after it had been erected. All this at least was involved in the grant. The defendants' position then amounts to this: That it was the thought and intent of the parties to the grant that the grantee could expend $90,000 in erecting a line thereunder, and immediately after its erection the defendant city could revoke the grant, and upon 90 days notice could compel the grantee to remove its line from the streets. If it can so do after the lapse of 30 years, it could have so done immediately after the erection and putting in operation of the line. In construing the grant one has to be on his guard against allowing the policy of the state as evidenced by its present Constitution and laws to affect his judgment. It is its policy now that no such privilege shall be given away under any con-.ditions. It shall only be sold to the highest bidder and that for a limited period of time, not exceeding 20 years. When this grant was made, no such policy was in existence. This circumstance has a bearing upon the construction of the grant. It has what has been termed "a contemporary equation." It contains "a standpoint as well as a subject." In ascertaining its meaning, therefore, one must transport himself to those days and look at it through their eyes. I think that it must be conceded on all hands that these general considerations applicable to a determination of the question are sound.

But I am met at the outset by the fact that the Kentucky Court of

Appeals, the highest court of the state, in recent litigation between the parties hereto has already held in accordance with defendant's contention (143 Ky. 86, 136 S. W. 138). It has held not only that the grant in question was a mere license revocable at the will of the city, but that the right to revoke can be exercised notwithstanding $90,-000 has been expended in erecting the line and the line as it now stands is of that value. Shortly after the passage of the ordinance providing a penalty for telephone companies doing business without franchises, the defendants took the position that plaintiff had no right to maintain and operate its line on and over the city streets as matters then stood—i. e., without any revocation of the grant—and were proceeding to enforce it against plaintiff. Thereupon it brought suit in the Franklin circuit court to enjoin defendants from so proceeding. The defendants demurred to the petition, and that court sustained the demurrer and dismissed the petition. On appeal to the Court of Appeals, that court reversed the judgment of the lower court holding that the defendants were not entitled under the then existing conditions to enforce the ordinance of June 13, 1910, against plaintiff, as it was not without any right whatsoever on the streets of the city. The court, however, went further than this, and, as stated, held that the nature of plaintiff's right under the grant in question was a mere license revocable by the defendant city, and that after the expiration of 90 days from notice of a revocation plaintiff could be ejected from the streets. 141 Ky. 588, 133 S. W. 564; 143 Ky. 86, 136 S. W. 138. It does not appear what has become of the case since then. It is to be taken I suppose that it is still pending in the lower state court. Am I bound, then, by this decision, or am I free to form my own opinion in regard to the matter? Indeed, is it or not my duty to exercise my own judgment?

It is well settled that the decision of the highest court of the state as to the validity and effect of state action claimed to make a contract and whose obligation is attempted to be impaired by subsequent state action, thereby raising a federal question, is not binding on the federal courts. It is the duty of the federal court when the same question comes before it to exercise its own independent judgment. The authorities are so numerous to this effect that no reference to them need be made.

[2] Yet I conceive it to be possible for such a question, even when decided by the state court, to be res adjudicata, so that the federal court is bound by it. As, for instance, had the plaintiff, instead of bringing this suit in this court, brought it in the Franklin circuit court, and had it been decided therein on appeal to the Court of Appeals that the grant was a license revocable at will, and this decision allowed to become final without an appeal to the Supreme Court of the United States, I apprehend that such decision by the Court of Appeals would be binding on this court, and it could not question it in a like suit subsequently brought therein. The decision of the Franklin circuit court alone to that effect allowed to become final would be res adjudicata in such a subsequent suit.

The question, then, is whether this decision of the Kentucky

Court of Appeals in the other litigation between the parties hereto is res adjudicata here. In deciding as it did it seems to me that the Court of Appeals went beyond the requirements of the case before it. The only question presented by the record therein was whether under the then existing conditions as set forth in plaintiff's petition it was on the streets of the defendant city without right. The defendants by their demurrer were claiming that it ·was. This contention plaintiff was disputing. This was the only controversy between them raised by the pleadings. Whether under other circumstances—i. e., upon an attempted revocation of the grant—plaintiff would then have been on the streets without right, was not in the case, and in the very nature of things could not have been, for the defendant city had not at that time attempted any revocation of the grant, and it was not set forth in the petition that it had or was even contemplating a revocation. The only question involved in that case was whether plaintiff had any right whatever, not how much right it had. It does not seem to have been claimed that it did not have some right if the resolution of April 11, 1881, was a valid grant and plaintiff owned the right conferred by it. The contention was that it was not a valid grant, and, if it was, plaintiff did not own the right conferred by it because not assignable. This being so, I do not see how it is possible for the decision in question to be res adjudicata. A single consideration I think is sufficient to convince one that it is not. If it is, then we have a decision by a state court against a federal right not questionable in a federal court. It could not have been questioned in the Supreme Court by an appeal from the final judgment in that case, because plaintiff could take no appeal therefrom to that court. The judgment would be in its favor, and grant it all the relief which it sought therein. It cannot be questioned here because it is res adjudicata. This cannot be. It is not possible for a state court to decide against a federal right, and for the party affected thereby not to be able in some way to question it in a federal court. This consideration seems to me demonstrates that the decision in question is not res adjudicata. The question was not made res adjudicata because of the fact that plaintiff filed a petition for rehearing, and urged therein that the decision of the question as to the nature of the grant and the effect of an attempt at revocation was erroneous. Its petition for rehearing was not an acquiescence in the court's right to pass on the question, but an objection to its so doing. All that was said on the subject of the decision in this particular being erroneous was in furtherance of plaintiff's claim that the question was not involved, and should not be passed upon.

The defendants cite the cases of Clay v. Deskins and Hennessey v. Tacoma Smelting & Refining Co., 63 Fed. 330, 11 C. C. A. 229, 129 Fed. 40, 64 C. C. A. 54, in support of this proposition stated in them, to wit:

"A decree or judgment of a state court between the same parties in a suit duly commenced before that in a federal court is res adjudicata in the latter."

But this goes no further than what I have already conceded. That is, that if this suit had been brought in the Franklin circuit court and

upon appeal from its judgment the Court of Appeals had held therein in accordance with its decision in the former litigation, the judgment therein, if allowed to become final without an appeal to the Supreme Court of the United States, would have been res adjudicata. The judgment of the Franklin circuit court to that effect allowed to remain final would have been such. If the former litigation had been brought in this court, and it or a higher court had decided therein that the extent of the grant was as the Court of Appeals held it to be, its decision would not be res adjudicata. This would be because the decision would go beyond the case before it—beyond that made by the pleadings and submitted to it. In the case of Munday v. Vail, 34 N. J. Law, 418, it is said in the opinion:

"A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not. it would seem, received much judicial consideration. And yet I cannot doubt that upon general principles such a defect must avoid a judgment. It is impossible to concede that because A. and B. are parties to a suit a court can decide any matter in which they are interested whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over those particular interests which they choose to draw in question that a power of judicial decision arises."

In the case of Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464, Judge Brewer, after making a quotation from the opinion in that case, including what I have quoted, said:

"We regard the views suggested in the quotation from the opinion as correct and as properly indicating the limits in respect to which the conclusiveness of a judgment may be invoked in a subsequent suit inter partes."

Counsel for defendant in arguing in support of their contention that the decision in question is res adjudicata say that "the parties are the same, the pleadings are practically the same, the relief prayed for practically the same." They did not have the courage to say that the pleadings are the same. Possibly they might well have said that the relief prayed for is the same, to wit, an injunction against the enforcement of the ordinance of June 13, 1910. But it could not truthfully be said that the pleadings are the same. They are indeed, not "practically" the same. In plaintiff's petition therein it was not alleged that defendant city had attempted a revocation of the grant in question, and the question was hence not raised whether or not it was revoked. That question was not and could not be up for decision therein. In the bill here it is alleged that subsequent to that litigation, at least subsequent to the decision of the Court of Appeals therein, the defendant city has attempted a revocation of the grant, and for the first time has the question as to whether the grant was revocable been raised and come up for decision.

It follows then from all that I have thus far said that I am at least free to exercise my own judgment on the question as to the nature of the grant under which plaintiff claims; yet I cannot help but realize the very great delicacy of the situation. What I am asked to do is to take position against that of the highest court of the state, and

that as to the validity of state action; yet, if it is my duty so to do, I must not shirk it. The situation oppresses me. But,

"It fortifies my soul to know
That though I perish, truth is so."

And in speaking the truth as I saw it I would do it "in love," or, more expressively, I would "truth it in love"; for I have the very highest respect for the Court of Appeals. I would much prefer to be with it than not with it, and it pains me whenever in the course of the performance of my duties I am constrained to differ from it.

[3] But in this case, though I were of the same mind as the Court of Appeals, I would not have the moral power to follow in its footsteps. This is so because the Sixth Circuit Court of Appeals, which is above me and whose views of the law I am bound to follow, has, as I see it, decided the identical question we have here, and which the Court of Appeals in the manner stated passed on in the other litigation, to wit, as to the nature and extent of the grant under which plaintiff claims, and it has decided that it is not a revocable license, but the grant of a permanent easement in the streets. This it so did in the case of Board and Mayor of Morristown v. East Telephone Co., 115 Fed. 304, 53 C. C. A. 132. That case involved a grant of a municipal corporation, to wit, the city of Morristown, Tenn., to the plaintiff here. The only difference between the two grants is that here the permission to erect poles is granted; whereas, there the right to erect poles was granted. I can see nothing in the slight difference of verbiage in the two grants to differentiate that case from this. The grant of permission to erect poles was the grant of a right to erect poles. But, however this may be, the opinion of the court was to the effect that the mere consent by a municipal corporation to the erection of a permanent structure on its streets by a public service corporation is the grant of an irrevocable easement in the streets. Judge Lurton said:

"The consent to the occupancy of the streets by the poles and wires of the telephone company for the purpose of maintaining a public telephone system was the grant of an easement in the streets and a conveyance of an estate or property interest, which, being in a large sense the exercise of a proprietary right rather than legislative, was irrevocable after acceptance, unless the power to alter or revoke was reserved. This principle has been too many times disclosed and applied by this court to require further elaboration. Detroit Citizens' St. Ry. Co. v. City of Detroit, 12 C. C. A. 365; 64 Fed. 628, 26 L. R. A. 667; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296; Iron Mountain Ry. Co. v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113; Citizens' Ry. Co. v. Africa, 23 C. C. A. 252, 77 Fed. 501."

I am therefore constrained to sustain the motion, but it is on the condition that the plaintiff execute bond in the sum of $10,000 to pay defendants and either of them any damages, if it be finally decided that the injunction should not have been granted, and to account and pay to each telephone subscribed the excess he, she, or it is required to pay since the issuance of the temporary restraining order and above the rentals fixed by the ordinance of June 13, 1910, in case it is finally decided that that ordinance is binding upon plaintiff.